**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JORGE LUIS MORALES,<br>     Petitioner,<br><br>     v.<br><br>UNITED STATES OF AMERICA,<br>     Respondent. | No. 3:12-cv-0194 (MPS) |

**MEMORANDUM OF DECISION**

**I.      Introduction**

Petitioner Jorge Luis Morales ("Mr. Morales") has filed a writ of habeas corpus under 28 U.S.C. § 2255[1] requesting that I vacate, set aside, or correct his sentence for a number of reasons. As set forth below, I GRANT Mr. Morales's petition only as to his ineffective assistance claim stemming from his counsel's failure to appeal Mr. Morales's improperly enhanced supervised release term. The rest of his petition is DENIED.

**II.  Procedural History**

**A.  The Indictment**

Mr. Morales was arrested on December 6, 2006 for his role as a lieutenant in a drug conspiracy led by his co-defendant, Edwin Sanchez, in Bridgeport, Connecticut. (PSR, Govt.'s Ex. 516.) Count One of the Superseding Indictment charged Mr. Morales with conspiracy to possess with intent to distribute 1,000 grams or more of heroin, a violation of 21 U.S.C. §§

---

[1] 28 U.S.C. § 2255 states, in relevant part:

> (a)  A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

841(a)(1), (b)(1)(A), and 846.   (Govt.'s Ex. 502, at 4-5.)   Count Three charged him with possession of a firearm by a convicted felon, a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (*Id*. at 6.)   Finally, Count Five charged him with engaging in a continuing criminal enterprise ("CCE"), a violation of 21 U.S.C. §§ 848(a), (b), and (c).[2]   Mr. Morales's CCE charge carried a mandatory minimum term of life imprisonment with no opportunity to argue for a lower sentence.   (*See* Govt.'s Sec. Supp. Br. [ECF No. 56], at 7-8); 21 U.S.C. § 848(b).   The Government later agreed to drop the CCE charge in exchange for Mr. Morales's guilty plea and stipulation that the drug quantity attributable to him was 30 kilograms of heroin.   (*Id*.)   As a result, Mr. Morales's sentencing range under the Guidelines was reduced to 360 months to life imprisonment.   (*Id*.)

### B.  Plea Agreement and Change of Plea

On January 7, 2008, Mr. Morales entered a guilty plea before The Honorable Alan Nevas[3] to Count One of the Superseding Indictment, charging Mr. Morales with conspiring to possess with intent to distribute 1,000 grams or more of heroin.   The plea agreement, dated the same day and signed and initialed by Mr. Morales, states that due to his prior felony convictions, Mr. Morales's minimum term of imprisonment was enhanced from 10 to 20 years, and that the

---

[2] Specifically, Count Five stated that Mr. Morales and two of his co-defendants, Edwin Sanchez and Edgar Nieves

> did knowingly, willfully, intentionally, and unlawfully engage in a Continuing Criminal Enterprise, in that the defendants did violate Title 21, United States Code, Sections 846 and 841(a)(1), as alleged in Count One, which is incorporated by reference herein, which violation involved at least 30 kilograms of heroin, and was part of a continuing series of violations of said statutes undertaken by the defendants in concert with at least five other persons, with respect to whom the defendants did occupy a position of organizer or manager and from which continuing series of violations the defendants obtained substantial income or resources.

(Govt.'s Ex. 502, Count Five.)

[3] Judge Nevas retired on February 2, 2009.

minimum term of supervised release would be enhanced to 10 years under 21 U.S.C. § 851.[4]
(Plea Agmt., Govt.'s Ex. 505, at 2.)  In a separate section, the plea agreement states that "[t]he
defendant understands and agrees that the offense of conviction carries enhanced penalties
because of his prior criminal record."  (*Id*. at ¶ 5.)  The Government filed its second offender
information under § 851 on January 7, 2008, the same day as Mr. Morales's change of plea
hearing; the information listed Mr. Morales's prior conviction as Operating a Drug Factory, a
violation of Conn. Gen. Stat. § 21a-277(c).  (*See* 3:06-cr-272, *USA v. Sanchez, et al.*, ECF No.
407.)

---

[4] 21 U.S.C. § 851(a) (1) states:

> No person who stands convicted of an offense under this part shall be sentenced
> to increased punishment by reason of one or more prior convictions, unless
> before trial, or before entry of a plea of guilty, the United States attorney files an
> information with the court (and serves a copy of such information on the person
> or counsel for the person) stating in writing the previous convictions to be relied
> upon. Upon a showing by the United States attorney that facts regarding prior
> convictions could not with due diligence be obtained prior to trial or before
> entry of a plea of guilty, the court may postpone the trial or the taking of the plea
> of guilty for a reasonable period for the purpose of obtaining such facts. Clerical
> mistakes in the information may be amended at any time prior to the
> pronouncement of sentence.

The Government may file a § 851 second-offender information to enhance a defendant's penalties under 21 U.S.C. §
841(b)(1)(A) based on his prior convictions.  The filing of the second-offender information enhanced Mr. Morales's
mandatory minimum term of imprisonment under § 841(b)(1)(A), which states:

> [An offender under this subsection] shall be sentenced to a term of
> imprisonment which may not be less than 10 years or more than life . . . If any
> person commits such a violation after a prior conviction for a felony drug
> offense has become final, such person shall be sentenced to a term of
> imprisonment which may not be less than 20 years and not more than life
> imprisonment . . . .

21 U.S.C. § 841(b)(1)(A).  In addition, his mandatory minimum supervised release term was enhanced:

> Any sentence under this subparagraph shall, in the absence of such a prior
> conviction, impose a term of supervised release of at least 5 years in addition to
> such term of imprisonment and shall, if there was such a prior conviction,
> impose a term of supervised release of at least 10 years in addition to such term
> of imprisonment.

*Id*.

The plea agreement also states that under the Sentencing Guidelines, the parties calculated Mr. Morales's sentencing range to be 360-months to life, and that under U.S.S.G. § 4B1.1, Mr. Morales was a career criminal. (Plea Agmt., Govt.'s Ex. 505, at ¶ 3.)  In addition, it states that the "parties agree that under the guidelines set forth at U.S.S.G. § 2D1.1(c)(1) (30 kilos or more of heroin), the defendant's base offense level is 38," that two levels were added under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm, and that three levels were added under U.S.S.G. § 3B1.1 for Mr. Morales's aggravating role. (*Id.*)  The parties further agreed that three levels should be subtracted under U.S.S.G. § 3E1.1 for his acceptance of responsibility. (*Id.*)  The resulting total offense level was 40, and the parties agreed that Mr. Morales's criminal history category ("CHC") was VI. (*Id.*)  The plea agreement also stated that the Government agreed that a sentence "of 360 months (30 years), the bottom of the applicable Guidelines range, is appropriate in this case." (*Id.*)  Mr. Morales reserved his right to argue for any downward departures, including a logjam departure and a non-Guidelines sentence. (*Id.*)  Both parties reserved their appeal rights. (*Id.* at ¶ 4.)

At the change of plea hearing, the Government summarized the contents of the plea agreement and Mr. Morales stated that he understood its contents. (COP Tr., Govt.'s Ex. 507, 20:5, 21:4.)  Mr. Morales's counsel then informed Judge Nevas that he intended to challenge the convictions enumerated in the Government's § 851 second offender information before the sentencing hearing. (*Id.* at 17:8-11, 18:13-14.)  After asking Mr. Morales a series of questions as to whether Mr. Morales had knowingly and voluntarily entered into the plea agreement, Judge Nevas accepted Mr. Morales's guilty plea. (*Id.* at 27:20-25, 28:1-3.)

### C.  Presentence Investigation Report

The probation officer's presentence investigation report ("PSR"), prepared in anticipation

4

of Mr. Morales's sentencing, summarized the contents of the plea agreement and concluded that Mr. Morales had 10 criminal history points from his prior convictions.  (PSR, Govt.'s Ex. 516, at 15.)  The report also outlined Mr. Morales's role in the drug trafficking conspiracy.  According to the PSR, an investigation revealed that Mr. Morales was responsible for supervising "packaging sessions" of heroin for co-defendant Edwin Sanchez's drug organization in Bridgeport, Connecticut, sessions that often lasted twelve hours at a time and during which Mr. Morales possessed a firearm. (*Id*. at 8-9, 19.)  The heroin was then distributed to violent drug gangs in the area.  (*Id*. at 9.)  Mr. Morales was also in charge of street level distribution in Bridgeport, and several cooperating witnesses made controlled purchases from him.  (*Id*. at 21-22, 26-30.)  By 2004, the Sanchez organization was responsible for distributing approximately one and a half kilograms of heroin per week in Bridgeport.  (*Id*. at 21.)  The investigation into the Sanchez organization utilized wiretaps, consensual recordings made by cooperating witnesses, and ongoing surveillance.  (*Id*. at 22.)

### D. Defense Counsel's Pre-Sentencing Objections to Enhancements under 21 U.S.C. § 851

Before sentencing, Mr. Morales's counsel filed two motions objecting to the second offender information the Government had filed under § 851.  (Govt.'s Exs. 512, 515.)  In relevant part, counsel argued that the Government's second offender information improperly identified and used as an enhancement Mr. Morales's 1994 conviction for Operating a Drug Factory.  In his initial brief, counsel argued that Mr. Morales had been forced to plead guilty to that charge by his prior counsel, and that Mr. Morales had not been made aware of the consequences of entering a guilty plea to that charge.[5]  (Govt.'s Ex. 512.)  In his second motion, counsel presented three arguments: that the Government improperly identified the predicate

---

[5] Mr. Morales does not raise this argument in his habeas petition.

offense in its second offender information because the predicate offense was actually "Aiding and Abetting a Drug Transaction," that the Government did not satisfy its burden of proof when it filed its second offender information because it did not specify the statute number and description of the predicate offense, and that the conviction, which resulted from an *Alford* plea,[6] could not be used as a predicate offense.  (Govt.'s Ex. 515.)

### E.  The First Sentencing Hearing

On December 17, 2008, Mr. Morales appeared before Judge Nevas for sentencing.  At the outset of the hearing, the Government indicated that it was seeking an obstruction of justice enhancement based on Mr. Morales's alleged involvement in the assault of a cooperating witness at the Wyatt Detention Facility, where Mr. Morales was being detained before sentencing.  The Government was prepared to call the cooperating witness to testify at the hearing, but Mr. Morales's counsel objected and requested a continuance to provide him adequate time to prepare his cross-examination.  (Dec. 17, 2008 Tr., Govt.'s Ex. 518, 5:17-24.)

Judge Nevas then stated, "I'm going to take a recess.  I want to see counsel in the robing room."  (*Id*. at 6:5-6.)  Mr. Morales's counsel, the prosecutor, and the probation officer then followed Judge Nevas to his chambers.  The parties agree that no court reporter was present during this *in-camera* meeting, and there is some dispute about the content of the ensuing discussion.  As explained in further detail below, Mr. Morales's counsel, the prosecutor, and the probation officer all agreed that Judge Nevas discussed the possibility of imposing a 25-year sentence.  (*See* Govt.'s Response [ECF No. 36], Affs. of Counsel, Bouffard, Reynolds.)  Initially after filing his habeas petition Mr. Morales agreed that after the meeting, "[My counsel] told me that the judge had offered me a 25-year sentence."  (Mot. to Supp. [ECF No. 23], Aff. at ¶ 3.)  In

---

[6] In an *Alford* plea, the defendant does not admit to the facts underlying the conviction.  *See North Carolina v. Alford*, 400 U.S. 25 (1970).

response to a discovery request related to this habeas petition, however, Mr. Morales's counsel stated for the first time that during the *in-camera* meeting, Judge Nevas had actually stated "22 years today and today only." (Govt.'s Ex. 530, Counsel Aff., Question 3.) Given this factual dispute, I found that an evidentiary hearing was required.[7] As discussed below, my finding of fact after the hearing is that Judge Nevas made a statement about a 25-year sentence that Mr. Morales told his counsel he was not interested in accepting.

After the *in-camera* meeting, the sentencing then continued in the courtroom and on the record. The Government clarified that Mr. Morales's sentence enhancement under § 851 was based on his 1994 Aiding and Abetting conviction (Dec. 17, 2008 Tr., Govt.'s Ex. 518, 6:12-25, 7:1-9), but that Mr. Morales should not be considered a career offender in light of *United States v. Savage*, 542 F.3d 959 (2d Cir. 2008).[8] (*Id.* at 8:2-25, 9:1-2.) Mr. Morales's counsel then tried to argue that *Savage* should also apply to the second offender information:

> COUNSEL:  Your Honor, I did file a motion to – an objection to the second offender information, and in there – in my objection, I note –
>
> COURT:  Well, let me ask you[.]  We had an off-the-record discussion here. Is that – Are we considering –
>
> COUNSEL:  Pardon?

---

[7] 28 U.S.C. § 2255(b) requires that the court shall hold an evidentiary hearing unless the habeas motion conclusively shows the petitioner is entitled to no relief:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255(b).

[8] In *Savage*, the Second Circuit vacated the defendant's sentence after holding that his conviction for violating Connecticut's narcotics statute based on an *Alford* plea could not be counted as a "controlled substance" offense within the meaning of the Sentencing Guidelines, and that the district court's calculation of the applicable Guidelines' sentencing range had therefore been incorrect. *See Savage*, 542 F.3d at 960.

> COURT:  I asked you whether or not the off-the-record discussion that we had in my robing room is going to be a factor here, or is it not?
>
> COUNSEL:  My client would like me to make the arguments to the Court; that is, the second offender information wasn't filed by the government, didn't even have the –
>
> COURT:  So the off the record discussion that we had is not going to be a factor in this – these proceedings, correct?
>
> COUNSEL:  I'm not sure of your question, sir?
>
> COURT:  Well, I think you understand the question.  I'm not going to put on the record what the essence of our off-the-record discussion was, but I think you know what it was, and you said you had to discuss it with your client.  He either agrees or he doesn't agree.
>
> (Pause.)
>
> COUNSEL:  One second, sir?
>
> (Counsel and the Defendant confer.)
>
> COUNSEL:  So agreed, Your Honor.  We just talked –
>
> COURT:  I'm sorry?
>
> COUNSEL:  We just talked about it and we agree.
>
> COURT:  All right.  Then let me go through the normal canvass.

(*Id*. at 9:19-25, 10:1-25, 11:1-4.)  Judge Nevas then permitted the Government to proceed with the testimony of the cooperating witness, after which he agreed to continue the sentencing hearing so Mr. Morales's counsel would have sufficient time to prepare his cross-examination.

### F.  The Second Sentencing Hearing

On January 14, 2009, Mr. Morales appeared before Judge Nevas for his second sentencing hearing.  Judge Nevas began the hearing by questioning Mr. Morales about a motion for new counsel that he had recently filed.  Mr. Morales explained that new counsel was

8

necessary because, in relevant part, he had difficulty communicating with his counsel[9] and because counsel did not want to challenge the second offender information.[10]  (Jan. 14, 2009, Govt.'s Ex. 522, Tr. 7:1-7.)  In response, the Government argued that Mr. Morales's counsel had already briefed and discussed the second offender issue at the last sentencing hearing, all with Mr. Morales's participation, and that Mr. Morales's counsel had worked hard to represent Mr. Morales.  (*Id.* at 14:14-17, 15:10-23.)  Judge Nevas agreed, denied Mr. Morales's motion, and made a finding that Mr. Morales's offense level was 40, his CHC was V, his Guidelines range was 360-months to life, and the mandatory minimum term of imprisonment after the second

---

[9] Specifically, Mr. Morales stated:

> MORALES:  You know, it's an ongoing thing with me and him.  You know, I call his office, there's a block on the phone.  I mean, I think he's a good attorney, but I think – I mean, he might be in a little over his head on this case.  I don't think he represented such a case of this caliber.

(Jan. 14, 2009 Tr., Govt.'s Ex. 522, 6:15-20.)

[10] Mr. Morales stated:

> MORALES: Last time he just told me again, when I changed my plea, when I seen [sic] you on January 12th when I changed the plea, Ms. Reynolds wasn't present, but you had gave me – you told me yourself, Your Honor, that you would hear my arguments about the 851.  Today I was informed that we – he doesn't even want to challenge it at all.  I mean, I just don't – I don't know his outlook and how he's going to defend me today.  I mean, my life, as you know, is in your hands, and it's very serious and, I mean, I don't know if he's ready for such a case like this, or to represent me like I should be represented, Your Honor.

(Jan. 14, 2009 Tr., Govt.'s Ex. 522, 7:1-13.)  He then continued:

> MORALES:  There was [sic] a few issues that we had at the plea agreement – at the plea session.  We asked you to – that we would – wanted to challenge the career criminal.  You said that you would hear argument at sentencing, along with the 851, along with the relevant conduct –
>
> COURT:  Well, all of those issues are – can be raised today.
>
> MORALES:  Oh. I've been asking him to do that.  That's – I mean, I haven't – I don't know.  We haven't sat down and discussed it.  I don't know which strategy he's going to – you know, I don't know basically what he's going to say today that's going to benefit me, Your Honor.

(*Id.* at 9:9-22.)

9

offender enhancement was 20 years.  (*Id.* at 17:3-10.)  Judge Nevas did not make findings as to the mandatory minimum term of supervised release.

Mr. Morales's counsel then cross-examined the cooperating witness whom the Government alleged had been assaulted at the behest of Mr. Morales.  Ultimately, Judge Nevas determined that "although, as I said, my instincts tell me [Mr. Morales] was involved . . . I don't think it's been established to the degree that I could make a finding and feel comfortable about it, so I'm not going to give the [obstruction] enhancement."  (*Id.* at 45:3-8.)  Judge Nevas ultimately sentenced Mr. Morales to 28 years imprisonment, noting that although he intended to sentence Mr. Morales to a Guidelines sentence of 30 years, he decided to depart after considering the factors in 18 U.S.C. § 3553(a)[11] and testimony from Mr. Morales's family.  (*Id.* at 74:10-25, 75:1-20.)   As for Mr. Morales's supervised release, Judge Nevas stated that "the standard conditions of supervised release" would apply so that Mr. Morales would be "placed on supervised release for a period of ten years" without elaborating on how he reached that determination.  (*Id.* at 75:14-19.)  The Judgment stated that "the defendant shall be on supervised release for a total term of 10 years."  (Govt.'s Ex. 524.)

### G.  Mr. Morales's Appeal

Mr. Morales, through the same counsel, appealed his sentence to the Second Circuit. Although counsel ultimately raised the deficient § 851 information after urging by Mr. Morales, he did not challenge the enhancement's effect on Mr. Morales's supervised release term.

Mr. Morales's counsel raised two arguments in the original appeal brief: (1) that Mr. Morales's sentence of 336 months' imprisonment was grossly disproportionate to that of his co-defendants, who were involved in the conspiracy much longer than Mr. Morales, and (2) that Mr.

---

[11] 18 U.S.C. § 3553(a) enumerates the factors the court must consider when determining a sentence.

Morales's sentence did not adequately take account of his difficult and traumatic past. (*United States v. Morales*, 08-3488-cr, Appeal Brief, filed Sept. 25, 2009.) When Mr. Morales received a draft of the appeal brief, he sent his counsel a letter with proposed edits and two arguments he felt were stronger: (1) that the § 851 enhancement was improper because the Government amended it after the entry of Mr. Morales's guilty plea, and (2) that Judge Nevas failed to make an adequate foreseeability finding, i.e., with respect to the drug quantity attributable to Mr. Morales. (*Id.*, Pro Se Letter, filed Nov. 2, 2009.) Mr. Morales attached this letter to a "Motion to Dismiss Appeal Without Prejudice to Refile" that he filed with the Second Circuit, arguing that his counsel had failed to raise these arguments on appeal. (*Id.* at 3.)

In response, Mr. Morales's counsel sent a letter to the Second Circuit explaining that Mr. Morales had not received the original appeal brief in time and would like counsel to appeal the additional issues Mr. Morales had identified. In particular, counsel stated as follows:

> My client believes that there are legal issues which should be included in the appeal but were not adequately mentioned in the appellate brief. However, I included all non-frivolous issues in the appellate brief. In fact, after careful consideration of the law, I recognized that the issues on appeal only barely exceeded the threshold for an <u>Anders</u> brief.

(*Id.*, Counsel's Letter, filed Dec. 2, 2009.) Nonetheless, counsel filed a supplemental appeal brief that, in addition to raising the issues identified by Mr. Morales, also argued that Judge Nevas should have granted a downward departure on the logjam issue. (*Id.*, Supp. Br., filed Dec. 30, 2009.) Although counsel argued in this brief that the § 851 enhancement was improper because the Government amended it after the entry of Mr. Morales's plea, counsel did not address the enhancement's effect on the supervised release term.

Mr. Morales then sent his counsel another letter, which, in relevant part, asked counsel to file a second supplemental brief challenging his predicate offense as an improper basis for

enhancement under § 851 because it was the result of an *Alford* plea.  (Pet. Letter [ECF No. 22], Ex. H.)  In response, counsel moved to file a second supplemental brief, so that "Appellant [may] brief all of the salient issues of his appeal."  (*United States v. Morales*, 08-3488-cr, Motion for Sec. Supp. Br., filed Apr. 21, 2009.)  Mr. Morales then sent his counsel an additional letter, in which he asked his counsel to "make sure to emphasize that" his predicate offense was the result of an *Alford* plea.  (Pet. Letter [ECF No. 22], Ex. J.)  After counsel's motion was granted, counsel filed a second supplemental brief, arguing that: (1) the § 851 enhancement improperly named the wrong predicate offense; (2) the § 851 enhancement improperly relied on a predicate offense resulting from an *Alford* plea; and (3) Judge Nevas should have calculated good time credits differently.  (*United States v. Morales*, 08-3488-cr, Second Supp. Br., filed May 20, 2010.)  Again, although this brief raised arguments regarding the improper § 851 enhancement, counsel discussed only the enhancement's effect on Mr. Morales's imprisonment term without mentioning its effect on his term of supervised release.

The Government, in its response, argued in relevant part that although the § 851 was deficient, any error in imposing a 28-year sentence on Mr. Morales was harmless because

> the district court's sentence of 28 years of imprisonment approximated the low end of the 360 month to life Guideline range, and substantially exceeded the 20-year mandatory sentence pursuant to 21 U.S.C. § 841(b)(1)(A).  In other words, the record shows that the district court would have imposed the same sentence regardless of the error.  Consequently, because the error was harmless, there is no need to remand Morales's case for resentencing.

(*Id.*, Govt.'s Brief, filed June 9, 2010.)  Like Mr. Morales's counsel, the Government did not address the enhancement's effect on the supervised release term, focusing solely on the imprisonment term.  In the reply brief, Mr. Morales's counsel again limited his discussion to the enhancement's effect on the imprisonment term without any argument that the enhancement also

12

improperly increased the supervised release term.  (*Id.*, Reply Br., filed June 23, 2010.)

The Second Circuit affirmed.  First, the Court found that Mr. Morales had waived his objections as to drug quantity because the district court had "relied on the drug quantity attributed to him in the PSR, thirty kilograms or more of heroin, which was the amount to which Morales had stipulated in his plea agreement," nothing in the record indicated that Mr. Morales's stipulation was not knowing and voluntary, and Mr. Morales did not object to the drug quantity at sentencing.  *United States v. Dominguez*, 393 Fed Appx. 773, 778 (2d Cir. 2010).  In addition, the Court found that although Judge Nevas did not make explicit findings as to drug quantity, Mr. Morales failed to raise this issue in the district court and there was no plain error because Mr. Morales stipulated to the Guidelines calculation, failed to contest the presentence report, and "the record indicates that the district court considered all other information presented to it."  *Id.*  Even assuming plain error, the Court continued, Mr. Morales could not show the omission affected his substantial rights because he stipulated to the precise quantity of drugs the district court relied on in calculating his sentence.  *Id.* at 779.

As for the § 851 enhancement, the Court noted that the Government had conceded on appeal that the second offender information was deficient because it misidentified the relevant drug conviction and because the conviction it described could not support an enhancement under § 841(b)(1)(A).  *Id.*  Nonetheless, the Court agreed with the Government that the error was harmless because the applicable Guidelines range was 360 months to life regardless of the enhancement, and because Judge Nevas ultimately imposed a sentence of imprisonment of 28 years—well above the erroneously determined mandatory minimum of 20 years and the correct mandatory minimum of 10 years.  *Id*; *see* 21 U.S.C. §841(b)(1)(A).  The Court did not discuss Mr. Morales's term of supervised release.  Finally, the Court rejected Mr. Morales's argument

that Judge Nevas erred in not granting downward departures based on Mr. Morales's difficult childhood or the logjam issue, as well as the argument that Mr. Morales's sentence was disproportionate to the sentences of his co-defendants. *Id*. at 780-81.

### H.  Mr. Morales's Section 2255 Habeas Petition

Mr. Morales filed his § 2255 petition *pro se*.   After this Court appointed him new counsel, Mr. Morales raised additional grounds for relief.   In sum, he argued that his sentence should be vacated, set aside, or corrected because: (1) Judge Nevas's *in-camera* meeting violated Mr. Morales's Sixth Amendment right to a public trial, the public's First Amendment right of access to sentencing proceedings, and Mr. Morales's due process rights; (2) Judge Nevas's *in-camera* meeting violated Federal Rule of Criminal Procedure 11(e)(1)[12] because he intervened in plea negotiations; (3) Judge Nevas violated 18 U.S.C. § 3553(c) by allegedly failing to state why Mr. Morales received a 28-year sentence; (4) Judge Nevas failed to make a drug quantity finding; (5) Judge Nevas failed to *sua sponte* order a "Fatico hearing"[13] to determine drug quantity; and (6) the Government's § 851 second offender information was defective and improperly increased Mr. Morales's term of supervised release.   Mr. Morales also argues he was denied his Sixth Amendment right to effective assistance of counsel because: (1) his counsel erroneously conveyed a 25-year, not 22-year, proposal from Judge Nevas to Mr. Morales at the

---

[12] Although Mr. Morales claims Judge Nevas violated Rule 11(e)(1) when he "became a participant and intervened in the plea negotiations" by "decid[ing] to have an off-the-record meeting with defense and the Government at the pronouncement of sentence hearing," (Pet. [ECF No. 2], at 17), it appears Mr. Morales meant to refer to Rule 11(c)(1), which states, in relevant part, "An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement.   The court must not participate in these discussions."  Fed. R. Crim. P. 11(c)(1).   The Government pointed out this discrepancy in its brief, and Mr. Morales did not respond.   I will therefore construe Mr. Morales's argument as one alleging a violation of Rule 11(c)(1).

[13] A district judge may hold a so-called Fatico hearing to determine whether allegations in the presentence report that are disputed by the defense should be considered in deciding punishment. *See United States v. Fatico*, 603 F.2d 1053, 1057 n.9 (2d Cir. 1979) ("And although we do not believe that a [Fatico] hearing will be necessary every time a defendant disputes facts or statements in the presentence report, we certainly would not hold it an abuse of discretion on the part of a district judge to hold such a hearing where there is reason to question the reliability of material facts having in the judge's view direct bearing on the sentence to be imposed, especially where those facts are essentially hearsay.").

first sentencing hearing; (2) his counsel did not adequately address relevant conduct, specifically the drug quantity foreseeable to Mr. Morales, at sentencing; (3) before Mr. Morales signed his plea agreement, his counsel did not adequately explain to him the effect of his drug quantity stipulation; (4) his counsel failed to notify the district court of its Rule 11(c)(1) violation; (5) his counsel failed to request a Fatico hearing on drug quantity; (6) his counsel failed to object to the miscalculation of Mr. Morales's criminal history; (7) his counsel failed to appeal the defective § 851 second offender information on the grounds that it improperly increased Mr. Morales's supervised release term; and (8) his counsel's "cumulative errors" deprived Mr. Morales of ineffective assistance of counsel.

I held an evidentiary hearing on October 1, 2014. *See* 28 U.S.C. § 2255(b). At this hearing, Mr. Morales withdrew his claims as to relevant conduct, i.e., the drug quantity attributable to him, and as to any statements by Judge Nevas regarding a 22-year proposal. However, Mr. Morales raised three new grounds of ineffective assistance of counsel. First, he argued that he told his counsel he conditionally accepted Judge Nevas's 25-year proposal and his counsel was ineffective in not conveying this acceptance to Judge Nevas. He also argued that his counsel was ineffective because immediately after Judge Nevas's *in-camera* meeting, his counsel did not (1) request a continuance; and (2) move for recusal of Judge Nevas. I will address these claims, together with the others he has raised and not withdrawn, below.

### III. Findings of Fact Based on the October 1, 2014 Hearing

At the evidentiary hearing, Mr. Morales withdrew his assertion that Judge Nevas had made a statement about 22 years in the *in-camera* meeting. Accordingly, Mr. Morales also withdrew his argument that his counsel was ineffective for failing to convey such a statement to him. Switching course, Mr. Morales instead argued for the first time that he told his counsel that

15

he would accept Judge Nevas's 25-year proposal as long as he could still make arguments regarding downward departures and relevant conduct, but that his counsel was ineffective because he failed to convey Mr. Morales's acceptance to Judge Nevas.

On cross-examination, the Government questioned Mr. Morales regarding this new claim. The Government directed Mr. Morales to the affidavit he had signed and submitted with his supplemental habeas brief, in which he stated, "*I did not accept the 25 years* because I didn't feel it was just that while the leader of the conspiracy received 24 years for his 10 year participation in the conspiracy I was to receive more for participating only in the final 18 months of it." (*See* Suppl. Mot. [ECF No. 23], Morales Aff., ¶ 5) (emphasis added). Mr. Morales conceded that he had written the affidavit under penalty of perjury, and that nothing in his affidavit or any of his prior briefing indicated that he had accepted the 25-year proposal.

Mr. Morales's trial/appellate counsel also testified, stating that he had conveyed Judge Nevas's statement regarding a 25-year sentence to Mr. Morales after the *in-camera* meeting, but that Mr. Morales had emphatically refused the proposal by crossing his arms and saying, "No, I want 20."[14] Because Mr. Morales had so clearly rejected the proposal, Mr. Morales's trial/appellate counsel did not think a continuance to allow Mr. Morales further time to reflect on the proposal was necessary. Mr. Morales's trial/appellate counsel further testified that Mr. Morales had never indicated to him that he conditionally accepted the 25-year proposal, either at the sentencing or any time thereafter.

I find Mr. Morales's trial/appellate counsel's testimony to be credible and supported by the record. Mr. Morales could not point to any evidence in the record that he had conditionally accepted the 25-year proposal. Although Judge Nevas repeatedly provided Mr. Morales an

---

[14] Counsel filed an affidavit in which he stated that his earlier reference, in a discovery response, to a 22-year sentence was erroneous. (Govt.'s Ex. 523.) The affidavit stated that the proposal conveyed by Judge Nevas was for 25 years. (*Id.*)

opportunity to speak after the *in-camera* meeting and at the second sentencing hearing, Mr. Morales never expressed any indication that he would be satisfied with a 25-year sentence. Further, apart from his testimony at the October 1 hearing, the only evidence in the record clearly demonstrates that Mr. Morales—in his own words—said he *rejected* the proposal.  In addition to Mr. Morales's affidavit, Mr. Morales's second supplemental habeas brief twice reiterates that Mr. Morales told his trial/appellate counsel he rejected the 25-year proposal.  (*See* Second Supp. Brief [ECF No. 51], at 6 ("According to the Petitioner his attorney conveyed an offer of 25 years which he rejected."; at 24 ("In the present case the ineffective advice of Petitioner's counsel (informing the Petitioner that the offer is 25 years when, in fact, it is 22 years) led to the offer's rejection by the Petitioner.").)  I therefore do not find credible Mr. Morales's claim—presented for the first time at the evidentiary hearing—that he instructed his attorney to accept conditionally the 25-year proposal.  Accordingly, I find that Mr. Morales's trial/appellate counsel informed Mr. Morales of Judge Nevas's statement regarding a 25-year sentence and that Mr. Morales unambiguously told his counsel he rejected the proposal.

Mr. Morales's trial/appellate counsel also testified that before the plea agreement was signed, he explained to Mr. Morales the drug quantity attributable to him as a co-conspirator in the Sanchez drug conspiracy, and that the amount was based on the Government's evidence against him.  I find this testimony credible, based on counsel's demeanor during his testimony and his thorough explanation of his discussions with Mr. Morales on the subject.

## IV.  Legal Standard for Section 2255 Habeas Petitions

To obtain relief under § 2255, Mr. Morales must demonstrate that his sentence "was imposed in violation of the Constitution or laws of the United States."  28 U.S.C. § 2255.  "[N]ot 'every asserted error of law can be raised on a § 2255 motion.'"  *Napoli v. United States*, 32 F.3d

31, 35 (2d Cir. 1994) (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)).  "The grounds provided in section 2255 for collateral attack on a final judgment in a federal criminal case are narrowly limited, and it has 'long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment.'"  *Id*. (quoting *United States v. Addonizio*, 442 U.S. 178, 184 (1979)).  Habeas relief is an extraordinary remedy and generally should only be granted where there is a "constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice.'"  *Id*. (quoting *Addonizio*, 442 U.S. at 185).

"Because collateral challenges are in 'tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack.'"  *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (quoting *Ciak v. United States*, 59 F.3d 296, 301 (2d Cir. 1995)).  First, the so-called mandate rule "bars re-litigation of issues already decided on direct appeal."  *Id*. Second, when a petitioner fails to raise a claim on direct appeal, a rule of procedural default applies: the petitioner "is barred from raising the claim in a subsequent § 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting therefrom or that he is 'actually innocent' of the crime of which he was convicted."[15] *De Jesus v. United States*, 161 F.3d 99, 102 (2d Cir. 1998) (internal citations omitted).  To establish cause, a petitioner must show "some objective factor external to the defense" that prevented him from raising the claim.  *McClesky v. Zant*, 499 U.S. 467, 493 (1991).  To establish prejudice, the petitioner must demonstrate "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting

---

[15] Mr. Morales has not argued that he is actually innocent, and so I need not evaluate his habeas petition on that basis.

his entire trial with error of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).  The exception to the cause and prejudice rule is a claim for ineffective assistance of counsel.  *Massaro v. United States*, 538 U.S. 500 (2003); *see also Yick Man Mui*, 614 F.3d at 54 (citing *Massaro* to hold that "a petitioner's collateral challenge" of ineffective assistance is "an important exception to the procedural default rule").

### V.  Mr. Morales's Claims of Error By the District Court

Mr. Morales's § 2255 petition raises a number of alleged errors committed by the district court.  Even assuming, *arguendo*, that each of Mr. Morales's claims amounts to "constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice,'" all of these claims are either barred by the mandate rule or procedurally defaulted, or they have been withdrawn.

### A.  Mr. Morales's Drug Quantity Arguments Are Barred by the Mandate Rule

Mr. Morales argues that Judge Nevas erroneously failed to make a drug quantity finding and to order *sua sponte* a Fatico hearing on drug quantity.  As an initial matter, at the October 1, 2014 evidentiary hearing, Mr. Morales's habeas counsel said Mr. Morales was withdrawing his claims as to relevant conduct after conceding that the Second Circuit had already addressed this issue on Mr. Morales's direct appeal.

Even if these claims were not withdrawn, the mandate rule "bars re-litigation of issues already decided on direct appeal."  *Yick Man Mui*, 614 F.3d at 53.  As discussed above, the Second Circuit squarely addressed and rejected Mr. Morales's claim that the district court failed to make a drug quantity finding.  *See Dominguez*, 383 Fed. Appx. at 778.[16]  And because the

---

[16] Specifically, the Second Circuit held that "[b]ecause Morales stipulated to a Guidelines calculation based on thirty kilograms or more of heroin and failed to contest the PSR's attribution of that quantity of heroin to him, and because

mandate rule also prevents re-litigation of issues "impliedly resolved by the appellate court's mandate," *Yick Man Mui*, 614 F.3d at 53, Mr. Morales's argument that Judge Nevas failed to order *sua sponte* a Fatico hearing as to drug quantity is barred because the Second Circuit implicitly addressed and rejected it by upholding the district court's determination of drug quantity based in part on Mr. Morales's stipulation.  Mr. Morales may therefore not raise these arguments on collateral attack.

### B.  Mr. Morales's Remaining Arguments that the District Court Committed Error Are Procedurally Barred

Mr. Morales's remaining claims against the district court are that: (1) Judge Nevas's *in-camera* meeting violated Mr. Morales's Sixth Amendment right to a public trial, the public's First Amendment right of access to sentencing proceedings, and Mr. Morales's due process rights; (2) Judge Nevas's *in-camera* meeting violated Federal Rule of Criminal Procedure 11(c)(1) because he intervened in plea negotiations; (3) Judge Nevas violated 18 U.S.C. § 3553(c) by allegedly failing to state why Mr. Morales received a 28-year sentence; and (4) the Government's § 851 second offender information was defective and improperly increased Mr. Morales's term of supervised release.  I need not reach the merits of these claims because Mr. Morales has provided no cause for his failure to raise them on direct appeal.  For example, Mr. Morales has not presented any evidence that these arguments were unavailable to him on his direct appeal, or that he had no factual or legal basis for them at that time.  *See McCleskey*, 499 U.S. at 493-94 ("Objective [external] factors that constitute cause include . . . 'a showing that the factual or legal basis for a claim was not reasonably available to counsel.'") (citing reference omitted).

---

the record indicates that the district court considered all other relevant information presented to it, the district court's failure to make an explicit finding of the relevant drug quantity manifests no error, let alone plain error." *Dominguez*, 393 Fed. Appx. at 778 (citing reference omitted).

Thus, although Mr. Morales argues that Judge Nevas's *in-camera* meeting at the first sentencing violated Mr. Morales's First Amendment, Sixth Amendment, and due process rights, "[i]t is generally accepted that a procedural default of even a constitutional issue will bar review under § 2255, unless the defendant can meet the 'cause and prejudice' test." *Campino v. United States*, 968 F.2d 187, 189 (2d Cir. 1992).   Mr. Morales may not, therefore, present these arguments for the first time in his § 2255 petition.

Similarly, his arguments that Judge Nevas violated Rule 11(c)(1)[17] by intervening in plea negotiations and 18 U.S.C. § 3553(c) by allegedly failing to explain in open court why Mr. Morales received a 28-year sentence are barred because Mr. Morales has not demonstrated any cause for his failure to raise these issues on direct appeal.[18]   Finally, to the extent Mr. Morales argues that the district court's supervised release sentence should be vacated because Judge Nevas relied on a deficient § 851 second offender information, the argument is procedurally barred for the same reasons.

## VI.  Mr. Morales's Claims of Ineffective Assistance of Counsel

---

[17] In any event, as discussed below, Rule 11(c)(1) would not apply to Mr. Morales's sentencing proceeding, which occurred months after his plea agreement and guilty plea were entered.

[18] Though I need not reach the merits of the Section 3553(c) argument because it is procedurally barred, I note that Judge Nevas did provide a detailed explanation for the sentence he imposed, as summarized by the Second Circuit on Mr. Morales's appeal.  *See Dominguez*, 393 Fed. Appx. at 779 ("In sentencing Morales to 28 years' (336 months') imprisonment—significantly above the 20-year minimum but below his Guidelines range—the district court cited Morales's extensive criminal history, past involvement with street gangs, participation in a scheme to distribute heroin, and recruitment of his nephew to join in that scheme.  Indeed, the court indicated that but for Morales's supportive family, it would have followed its original intent to impose a Guidelines sentence of 360 months.").  In addition, to the extent Mr. Morales tries to raise these issues through an ineffective assistance claim by arguing that the *in-camera* meeting violated his rights under the First Amendment, Sixth Amendment, and due process clause, and that his counsel was ineffective for failing to object to the meeting on such basis, I find that this failure to object does not amount to ineffective assistance.  First, Mr. Morales fails to identify any prejudice that resulted from the failure to object.  He has not demonstrated a reasonable probability that but for his counsel's lack of objection to the *in-camera* meeting, his sentence would have been different.  *Strickland v. Washington*, 466 U.S. 668, 694 (1984).  Second, the only suggestion of prejudice alleged by Mr. Morales is "[n]ot knowing why" he received his sentence (*see, e.g.*, Second Supp. Br. [ECF No. 51], at 25 ("Not knowing why is the harm.")), an argument that is foreclosed by the Second Circuit's reasoning on direct appeal.  Again, the Court found Mr. Morales *does* know why he received his 28-year imprisonment sentence because Judge Nevas explained his reasoning for imposing that sentence in open court.  *Dominguez*, 393 Fed. Appx. at 779.

For the reasons above, Mr. Morales's claims for ineffective assistance of counsel are the only ones I may consider on his § 2255 petition.  To succeed, Mr. Morales must establish that his counsel's performance (1) "fell below an objective standard of reasonableness," and (2) that his counsel's unprofessional errors actually prejudiced him.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  When evaluating the first prong, I must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Id.* at 689 (quoting reference omitted).  As to the second prong, Mr. Morales must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  When a petitioner can demonstrate a reasonable probability that his sentence was increased due to his counsel's errors, even relatively short increases in the ultimate sentence received will suffice to show *Strickland* prejudice.  *Glover v. United States*, 531 U.S. 198, 203 (2001).  Finally, while Mr. Morales must satisfy both components to succeed on his ineffective assistance of counsel claims, "there is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one."  *Strickland*, 466 U.S. at 697.

As an initial matter, because Mr. Morales withdrew his claims as to relevant conduct, I need not address his arguments that his counsel was ineffective for inadequately addressing relevant conduct and not requesting a Fatico hearing on drug quantity.  In addition, I need not address Mr. Morales's argument, raised for the first time at the evidentiary hearing, that his counsel was ineffective for failing to convey Mr. Morales's conditional acceptance of a 25-year

sentence to Judge Nevas, because I have made a factual finding that Mr. Morales never expressed such conditional acceptance to his counsel.

### A.  Trial Counsel Adequately Explained the Plea Agreement to Mr. Morales

Mr. Morales argues that his counsel did not adequately explain the effect of the drug quantity stipulation to him before he signed his plea agreement.  In connection with a guilty plea, an attorney's representation is deemed effective so long as he "communicat[ed] to the defendant the terms of the plea offer," and "inform[ed] [the defendant] of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed."  *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000).  In this context, the prejudice prong requires that Mr. Morales show that but for his trial counsel's deficient representation, he "would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  The petitioner faces a "formidable barrier" in cases such as this one, where he has previously asked the court to enter a plea of guilty, has attested under oath and in open court that he understands the consequences of his decision to plead guilty, and has read and signed a written plea agreement.  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

As discussed above, I find credible Mr. Morales's trial/appellate counsel's testimony that counsel explained the basis for the drug quantity amount in the plea agreement before Mr. Morales stipulated to it and entered his guilty plea.[19]  Further, as the Second Circuit already found, Mr. Morales not only knowingly and voluntarily entered into his plea agreement and stipulated to the drug quantity, he failed to contest the PSR's attribution of that quantity to him.  *Dominguez*, 393 Fed. Appx. at 778.  Mr. Morales has therefore failed to overcome the "formidable barrier" presented by this claim.

---

[19] At the change of plea hearing, Judge Nevas asked Mr. Morales, "Are you satisfied with [your counsel's] representation of you?"  Mr. Morales responded, "Yes, sir."  (Jan. 7, 2008 Tr., Govt.'s Ex. 507, 5:6-8.)  It was not until over a year later at his second sentencing hearing that Mr. Morales complained about his counsel.

In any event, even if I were to find Mr. Morales's counsel failed to inform him as to the effect of the drug quantity stipulation, Mr. Morales has still failed to satisfy the prejudice prong of ineffective assistance because he does not argue that he would not have pled guilty but for his counsel's allegedly deficient performance.   In fact, Mr. Morales explicitly acknowledges the contrary by stating that he "is not attacking his plea agreement in no [sic] way, shape or form." (Reply [ECF No. 60-1], at 2.)   Mr. Morales's decision not to challenge his plea agreement is unsurprising, given that the Government had dropped its CCE charge against Mr. Morales in exchange for his guilty plea and drug quantity stipulation.   Had Mr. Morales gone to trial instead of pleading guilty, a conviction on the CCE charge would have resulted in mandatory life imprisonment instead of the 360 months to life range Mr. Morales faced after pleading.   *See supra* note 2, and 21 U.S.C. § 848(b).   Mr. Morales has thus acknowledged that he would not have exercised his right to proceed to trial had the drug quantity stipulation been more clearly explained to him.   He therefore cannot establish the prejudice prong of the *Strickland* test.   *Hill v. Lockhart*, 474 U.S. at 59.   This claim is denied.

### B. The Alleged Rule 11(c)(1) Violation

Mr. Morales argues that the district court's *in-camera* meeting violated Rule 11(c)(1) and that his counsel was ineffective for both failing to notify Judge Nevas of this violation and not raising it on appeal.  This argument is without merit.

Rule 11(c)(1) states, in relevant part, "An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement.  The court must not participate in these discussions." Fed. R. Crim. P. 11(c)(1).  The plain language of the Rule shows it applies to *plea agreement discussions*, which, in Mr. Morales's case, occurred months *prior* to the first sentencing hearing, which is when Mr.

24

Morales alleges the Rule 11(c)(1) violation occurred.  Even assuming, *arguendo*, that Judge Nevas's statements about a 25-year sentence could be construed as a Rule 11(c)(1) violation, Mr. Morales has failed to show any prejudice from his counsel's failure to raise this issue at sentencing or on appeal, and it is difficult to see how he could do so, because Mr. Morales *rejected* Judge Nevas's proposal and nonetheless received a sentence below the Guidelines range.  Mr. Morales offers no evidence that, had his counsel objected to the *in-camera* meeting or Judge Nevas's statements about a 25-year sentence, the sentence actually imposed would have been different.

### C.  The Miscalculation of Mr. Morales's Criminal History Category

Mr. Morales argues that his counsel provided ineffective assistance when he failed to object to the calculation of Mr. Morales's CHC, which he contends was erroneous.  Because Mr. Morales's Guidelines range would have remained the same even if his CHC had been reduced, he cannot show prejudice, and this claim is denied.

The district court found Mr. Morales fell within CHC V, which meant, at an offense level of 40, that the Guidelines range was 360-months to life.  In his initial § 2255 petition, Mr. Morales argued that his CHC was incorrect because two of his prior convictions should have been considered "related cases" and therefore treated as one sentence, resulting in a reduction of three criminal history points and a CHC of IV.  (Pet. [ECF No. 2], at 26-27.)  In his supplemental brief, Mr. Morales also argued that one of his prior convictions—representing one additional criminal history point—was improperly counted because it was more than 10 years old.  (Second Supp. Br. [ECF No. 51], at 17-18.)

I need not reach the merits of Mr. Morales's argument because even if he were correct, his Guidelines range would not have changed from that used at his sentencing:  360-months to

life.  In other words, Mr. Morales's sentencing range would remain the same whether his CHC was V, IV, or even III.  *See* 2009 U.S.S.G. Manual, § 5A.  The only way Mr. Morales could obtain a lower sentencing range, based on the arguments he has presented, would be by reducing his offense level below 40.  This would require reducing the drug quantity attributable to Mr. Morales.  However, Mr. Morales withdrew his arguments challenging his relevant conduct and they are in any event without merit, as discussed above.  Thus, because any errors in the determination of Mr. Morales's CHC are harmless, Mr. Morales cannot show that had his counsel objected to the miscalculation, "there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Finally, to the extent Mr. Morales argues his counsel was ineffective because he should have predicted that any CHC miscalculation could potentially have prejudicial effects if the Guidelines were to be amended in the future, that argument is rejected.  "'An attorney is not required to forecast changes or advances in the law' in order to provide effective assistance. Rather, 'counsel's performance must be assessed . . . as of the time of counsel's conduct without the benefit of hindsight.'"  *McCoy v. United States*, 707 F.3d 184, 188 (2d Cir. 2013) (internal citation and quoting reference omitted).

### D. Failure to Move for a Recusal and Continuance at the First Sentencing Hearing

At the evidentiary hearing, Mr. Morales, relying on the testimony of his expert witness, Attorney J. Patten Brown, III, raised two additional arguments:  that his counsel was ineffective because immediately after the parties resumed the sentencing hearing following Judge Nevas's *in-camera* meeting, (1) his counsel failed to move for a continuance to allow Mr. Morales additional time to consider the 25-year proposal; and (2) his counsel failed to move for recusal of

26

Judge Nevas.  Both of these arguments lack merit.

First, Mr. Morales has failed to show that his trial counsel's failure to move immediately for a continuance fell below an objective standard of reasonableness sufficient to satisfy the first prong of *Strickland*.  Based on my findings of fact following the evidentiary hearing, Mr. Morales unambiguously conveyed to his counsel his rejection of the 25-year proposal.  It was thus objectively reasonable for his counsel to believe that moving for a continuance to allow Mr. Morales more time to consider the proposal was unnecessary.  The record also shows that Judge Nevas gave Mr. Morales and his counsel time for Mr. Morales to consider the 25-year proposal (Dec. 17, 2008 Tr., Govt.'s Ex. 518, 10:21-16, 11:1-2) (showing Judge Nevas allowed Mr. Morales to confer off-the-record with counsel, and that they did).  And Mr. Morales, in his own sworn and signed affidavit, stated:

> 3.  After the [*in-camera*] meeting, and after the judge questioned [my counsel], if he had communicated the substance of the robing room meeting to me since I continued to request certain judicial determinations, [my counsel] told me that the judge had offered me a 25-year sentence.
>
> 4.  Once [my counsel] told me this, *I was given an opportunity to briefly speak with my family who were present in the courtroom about this 25 year offer.*
>
> 5.  I did not accept the 25 years because I didn't feel it was just that while the leader of the conspiracy received 24 years for his 10 year participation in the conspiracy I was to receive more for participating only in the final 18 months of it.

(Supp. Mot. [ECF No. 23], Morales Aff. ¶¶ 3-5) (emphasis added).  In his own words, Mr. Morales has stated that he had time to consider the 25-year proposal and speak with his family about it, and then rejected it.  His counsel's decision not to request a continuance for additional time therefore did not fall below an objectively reasonable standard.  *See Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) ("[A] reviewing court must judge [counsel's] conduct 'on the basis

of the facts of the particular case,' viewed at the time of counsel's conduct, and may not use hindsight to second-guess his strategy choices.") (internal quotation omitted).

In addition, Mr. Morales has not satisfied the "prejudice" standard of *Strickland* by demonstrating a reasonable probability that had counsel moved for a continuance, the outcome of the proceeding would have been different.   In fact, his counsel *did* request—and receive—a continuance, in response to the Government's obstruction enhancement against Mr. Morales. Mr. Morales has not demonstrated that there is a reasonable probability the outcome of his proceeding would have been different had his counsel requested an *additional* continuance.  This claim is therefore without merit.

Similarly, Mr. Morales's counsel was not ineffective by failing to move to recuse Judge Nevas.  Under 28 U.S.C. § 144, a judge should recuse himself when a party has filed "a timely and sufficient affidavit" showing that "the judge before whom the matter is pending has a personal bias or prejudice either against [the party] or in favor of any adverse party."  28 U.S.C. § 144 (*see also* 28 U.S.C. § 455(a) ("Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.")).  On a motion for recusal, the question is:

> Would a reasonable person, knowing all the facts, conclude that the trial judge's impartiality could reasonably be questioned? Or phrased differently, would an objective, disinterested observer fully informed of the underlying facts, entertain significant doubt that justice would be done absent recusal?

*United States v. Bayless*, 201 F.3d 116, 126 (2d Cir. 2000) (quoting reference omitted).  As Mr. Morales's expert conceded at the evidentiary hearing, seeking recusal is a highly risky strategy and is thus rarely done.

To resolve this issue, I need not decide whether Judge Nevas's holding of an *in-camera*

meeting and statements regarding a 25-year sentence were proper.[20]  That is so because it is clear that counsel's decision not to move for Judge Nevas's recusal was a strategic decision under *Strickland*.  It was well within counsel's strategic purview to determine that moving for recusal risked antagonizing the district court at a delicate time—in the middle of a sentencing hearing. Aware that such motions are rarely made and even more rarely granted, counsel could reasonably have concluded that the risk of making the motion was not worth the potential benefit.  Even if such a motion were granted, there was no certainty that another district court judge would sentence Mr. Morales more favorably.  *See Bayless*, 201 F.3d at 130-31 (finding counsel was not ineffective for deciding not to move for recusal because he "may have concluded that his client was better off in [the current judge's] courtroom than in any other.").

Similarly, Mr. Morales has failed to satisfy the prejudice prong of *Strickland* because he has not demonstrated that but for his counsel's failure to move for recusal, there is a reasonable probability that the outcome of sentencing would have been different.  Mr. Morales has not provided any evidence that Judge Nevas would have granted the motion or that any new judge would have then sentenced Mr. Morales more favorably.  Nor has Mr. Morales demonstrated that had his counsel moved for recusal and had Judge Nevas denied the motion, Mr. Morales would have nonetheless received a more favorable sentence.  Mr. Morales's claim is therefore without merit.

### E.  Failure to Challenge the Effect of the Defective § 851 Second Offender on the

---

[20] I do note, however, that the Sixth and Ninth Circuits have expressed clear disapproval of a district court's engaging in negotiations during sentencing.  *See United States v. Markin*, 263 F.3d 491, 497 (6th Cir. 2001) ("Arguably . . . the district court's comments at the status conference would not rule afoul of Rule [11(c)].  We are nonetheless troubled by a district court's participation in sentencing discussions in which a criminal defendant offers to waive a legal argument in return for consideration in sentencing."); *United States v. Gonzales-Melchor*, 648 F.3d 959, 965 (9th Cir. 2011) ("This unusual and potentially coercive situation—a waiver of appellate rights negotiated by the district court during sentencing—implicates the same concerns Rule 11(c)(1) seeks to remedy.  The negotiation was potentially coercive because of the unequal positions of the judge and the accused, and that potential was especially high because Gonzalez-Melchor had to decide immediately whether to waive his appellate rights.") (internal citations and quotations omitted).

**Supervised Release Term**

Finally, Mr. Morales argues that his counsel was ineffective for failing to challenge the defective § 851 second offender information on the grounds that it improperly increased Mr. Morales's supervised release term from 5 to 10 years.  Because I find that Mr. Morales's supervised release term *was* likely improperly increased as a result of the second offender information and that it was not objectively reasonable for counsel to omit this argument on appeal, and because that omission prejudiced Mr. Morales, I grant Mr. Morales's § 2255 petition as to this issue.

"When a claim of ineffective assistance of counsel is based on failure to raise viable issues, the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal."  *Mayo*, 13 F.3d 533 (quoting reference omitted).  A "petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  *Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998) (citing *Mayo*, 13 F.3d at 533).

Defense counsel's briefing on appeal demonstrates that he discussed the effect of the § 851 enhancement only on the imprisonment term, not on the supervised release term.  As discussed above, in the original appeal brief counsel did not even raise the deficient § 851 filing. (*See United States v. Morales*, 08-3488-cr, Appeal Brief, filed Sept. 25, 2009) (arguing Mr. Morales's imprisonment term was disproportionate to his co-defendants', and that his sentence did not adequately account for his difficult and traumatic past).  It was only after Mr. Morales received a copy of the brief—after it had been filed—and told his counsel the § 851 enhancement was a stronger argument that counsel filed a supplemental brief arguing that the enhancement

was improper because the Government amended the second offender information after Mr. Morales had pled guilty.  (*Id*., Supp. Br., filed Dec. 30, 2009, at 3-10.)  Prior to filing this supplemental brief, counsel sent a letter to the Second Circuit expressing his view that he had already briefed all non-frivolous issues but that he sought leave to file a supplemental brief because *Mr. Morales*—not counsel—"believes there are legal issues which should be included in the appeal but were not adequately mentioned in the appeal brief."  (*Id*., Counsel Letter, filed Dec. 2, 2009.)  Counsel continued: "However, I included all non-frivolous issues in the appellate brief.  In fact, after careful consideration of the law, I recognized that the issues on appeal only barely exceeded the threshold for an <u>Anders</u> brief."  (*Id*.)  In this supplemental brief, counsel again did not address the enhancement's effect on Mr. Morales's supervised release term.

Similarly, counsel raised the argument that the § 851 enhancement was improperly based on an *Alford* plea only after Mr. Morales sent him two letters asking that he do so.  (Pet. Letter [ECF No. 22], Exs. H, J.)  And while counsel's second supplemental brief did argue that the district court erred "by applying the sentencing enhancement" because the Government named the wrong predicate offense and because the predicate offense resulted from an *Alford* plea, the brief addressed the enhancement's effect only on Mr. Morales's imprisonment term, not on his supervised release term.  (*United States v. Morales*, 08-3488-cr, Second Supp. Br., filed May 20, 2010.)  In particular, counsel repeatedly stated that the enhancement improperly increased Mr. Morales's mandatory minimum term of imprisonment from 10 years to 20 years without ever mentioning its effect on supervised release.  (*See id.*, at 5 ("As such, this Defendant had a mandatory minimum of a 10-year incarceration (not 20 years).); at 9 ("The Defendant's sentence – of 28 years – is simply substantially more than all the sentences, even those imposed on members of the conspiracy who participated many years longer than the Defendant.").)

Further evidence that counsel failed to raise the enhancement's effect on the supervised release term is that the Government, in its response brief, discussed only the enhancement's effect as to Mr. Morales's imprisonment term.   As discussed above, the Government argued that any error from an improper § 851 enhancement was harmless because

> the district court's sentence of *28 years of imprisonment* approximated the low end of the 360 month to life Guideline range, and substantially exceeded the *20-year mandatory sentence* pursuant to 21 U.S.C. § 841(b)(1)(A).  In other words, the record shows that the district court would have imposed the same sentence regardless of the error.  Consequently, because the error was harmless, there is no need to remand Morales's case for resentencing.

(*Id.*, Govt.'s Brief, filed June 9, 2010 (emphasis added).)   The Government did not address whether the enhancement improperly increased Mr. Morales's supervised release term, but only discussed the issue that had been presented by defense counsel, i.e., Mr. Morales's imprisonment term.   *See id.* at 29 ("The government agrees that the defendant's conviction would be insufficient to enhance his sentence under § 851, but any error in filing this information was harmless because the district court's sentence of 28 years of imprisonment far exceeded the 20-year mandatory sentence pursuant to 21 U.S.C. § 841(b)(1)(A)."); at 36 ("Indeed, there is no indication that the defendant's 20-year mandatory minimum factored at all into the court's selection of an appropriate sentence" because the district court discussed a number of other factors before sentencing Mr. Morales to 28 years).)

The reply brief filed by Mr. Morales's counsel confirms the point.  There, counsel framed the issue before the Court as follows:

> The deficient second-offender information under 21 U.S.C. § 851 caused extreme harm and undue hardship to Morales because the information overstated Morales' criminal history and wrongly established a *20-year mandatory-minimum sentence* which the District Court used as a starting point for the purposes of

> sentencing, thereby causing Morales' sentence to be overinflated, unjust, and entered in error.

(*Id.*, Reply Br., filed June 23, 2010, at 5) (emphasis added).  Throughout the remainder of the reply brief, counsel consistently focused on the enhancement's effect on the imprisonment term without mentioning its corresponding effect on supervised release.  (*See id.*, at 5 ("The invalid § 851 enhancement increased the mandatory minimum from 10 years to 20 years."); *id.* ("The District Court used the mistaken 20 year minimum as a 'starting point' to impose a sentence of 28 years imprisonment . . . .  The District Court must resentence the Defendant with a starting point of a 10 year minimum sentence, rather than 20 years."); at 7 ("The District Court imposed a sentence that was 8 years greater than the minimum."); at 7-8 ("As relevant here, § 841(b)(1)(A) imposes a mandatory minimum of 10 years' imprisonment for the Appellant's offense."); at 13 ("It is possible that the judge intended to impose a sentence above the 8 year minimum, and would have imposed an 18 year sentence, instead of a 28 year sentence, if the Government had not botched the § 851 information.").)

Not surprisingly, the Court of Appeals, too, focused on the effect of the § 851 enhancement on the imprisonment term only.  Defense counsel's letter to Mr. Morales summarizing the oral argument (Govt.'s Ex. 527) states as follows:

> The judges were quick to point out that they did not believe the defective § 851 information was a harmful error.  They emphasized that Judge Nevas stated *on the record* that he was going to sentence you to 30 years imprisonment, but reduced your sentence to 28 years due to your family.  Therefore they argued, the defective information was irrelevant because your minimum sentence – either 10 years or 20 years – was not even a factor considered by the sentencing judge.  Chief Judge Raggi [sic] emphasized that your sentencing judge departed downward from the sentencing guidelines by two years.  Judge Nevas did not sentence you based on your minimum mandatory sentence, but rather on the guideline range of 30 years to life, and even departed downward two years from that.  Therefore, they said, it didn't

> matter that the defective information increased your minimum
> sentence because it did not affect your guideline range.

(*Id*.) (emphasis in original).  As described in counsel's letter, the Court and counsel focused solely on the enhancement's effect on Mr. Morales's imprisonment term, not his supervised release term.  There is no suggestion that counsel ever tried to raise the supervised release term.

The silence in the Second Circuit's opinion as to the supervised release term, even when discussing the deficient § 851 information, is further confirmation that counsel did not raise the supervised release issue.  As discussed, the Government on appeal acknowledged that the second offender information was deficient "because it misidentified the relevant drug conviction and because the conviction it described could not support a § 841(b)(1)(A) enhancement in any event."  *Dominguez*, 393 Fed. Appx. at 779.  The Second Circuit addressed the Government's concession and counsel's § 851 arguments but only as to Mr. Morales's imprisonment term, not as to supervised release.  *Id*.

The issue of whether the § 851 filing improperly increased the supervised release term was "significant and obvious," *Mayo*, 13 F.3d at 533, and counsel's repeated failures to raise it amount to a serious error.  While the Government might have quibbled over that point when the petition was filed, it can no longer do so.  Finding that the improper enhancement of the supervised release term of Mr. Morales's co-defendant, Edwin Sanchez, amounted to plain error, that is, an error that is "clear or obvious," "affect[s] the appellant's substantial rights," and "seriously affects the fairness, integrity, or public reputation of judicial proceedings," the Second Circuit recently vacated Mr. Sanchez's sentence on direct appeal.  *United States v. Sanchez*, No. 14-2429-cr, 2014 WL 6805197, at *1 (2d Cir. Dec. 4, 2014).[21]  To appreciate the degree to

---

[21]  In *United States v. Sanchez*, the Second Circuit found not only that the Government's defective § 851 enhancement had an improper effect on the supervised release term , but also that it had improperly influenced the imprisonment component of Mr. Sanchez's sentence.  *See United States v. Sanchez*, No. 14-2429-cr, 2014 WL

which the Second Circuit considered the improper enhancement of Mr. Sanchez's supervised release term to be an obvious and fundamental error, it is necessary to set forth some procedural background.  Mr. Sanchez's counsel initially filed an *Anders* brief with the Second Circuit, after which the Government filed a motion for summary affirmance.  (*United States v. Sanchez*, No. 14-2429-cr, Appeal Br. [ECF No. 136-1], at 8.)  The Second Circuit denied counsel's motion to withdraw under *Anders* and denied the Government's motion for summary affirmance, then ordered counsel to brief, in relevant part, the following issue:

> whether the district court committed plain error by erroneously granting a sentencing enhancement pursuant to 21 U.S.C. § 851 and sentencing Sanchez to a ten-year term of supervised release, which it may have believed was the Sentencing Guidelines and the statutory minimum sentence.  See United States v. Gamez, 577 F.3d 394, 401 (2d Cir. 2009) (per curiam) (finding that sentencing error affected defendant's substantial rights because it resulted in an increased Guidelines range); see also United States v. Gordon, 291 F.3d 181, 193 (2d Cir. 2002) ("An error affects substantial rights if the error is prejudicial and affected the outcome of the district court proceedings.") (internal quotation marks and citation omitted)).

(*Id*. at 9.)  Instead of briefing this issue, counsel submitted another *Anders* brief.  (*Id*.)  The Second Circuit found that this second *Anders* brief was inappropriate because the Court had already identified a non-frivolous issue for counsel to appeal.  (*Id*.)  The Court granted counsel's motion to withdraw and appointed new CJA counsel, who briefed this issue, along with the improperly enhanced imprisonment term.  (*Id*.)

As it had done in Mr. Morales's appeal, the Government conceded that the enhancement

---

6805197 (2d Cir. Dec. 4, 2014).  In reaching this holding, the Second Circuit distinguished *Dominguez*—where it had held that the improper enhancement's effect on Mr. Morales's term of imprisonment was harmless—by reasoning that in *Dominguez*, "the error had not affected the sentence imposed."  *Id.* at *3.  The Second Circuit contrasted that harmless error with Mr. Sanchez's imprisonment term, which it found was plain error because it was based on "the assumption of [an erroneously calculated] 20-year minimum sentence [that] permeates the record, and the District Court never stated affirmatively that it had not considered the miscalculated mandatory minimum in imposing its 288-month sentence.  Indeed, the record strongly suggests that the District Court relied on the incorrect minimum in imposing this sentence."  *Id*.

was improper because its § 851 filing was deficient, but it argued that such error was nonetheless

harmless—as it related to Mr. Sanchez's *imprisonment* term—because the district court had

sentenced Mr. Sanchez to a term of imprisonment well above the mandatory minimum. *Sanchez*,

2014 WL 6805197, at *2. This was the same argument on which the Government had prevailed

in Mr. Morales's appeal. *Dominguez*, 393 Fed. Appx. at 779. In Mr. Sanchez's appeal,

however, the Government conceded that remand was necessary as to the supervised release term.

*Id*. The Second Circuit agreed, finding that the enhancement of the supervised release term was

plain error. *Sanchez*, 2014 WL 6805197, at *1 (quoting reference omitted). Finding remand was

necessary, the Court stated "[t]his is undoubtedly so, because the District Court sentenced

Sanchez to the exact mandatory minimum term of 10 years, which was incorrectly calculated."

*Id*. at *2.[22]

The circumstances surrounding the supervised release term imposed by Judge Nevas on

these two co-defendants are substantively identical. In this case, too, Judge Nevas sentenced Mr.

Morales to "the exact mandatory minimum of 10 years, which was incorrectly calculated."

*Sanchez*, 2014 WL 6805197, at *2. In Mr. Morales's case, the parties and the district court all

consistently and unequivocally relied on the assumption that the mandatory minimum term of

supervised release was 10 years. This is the term provided in the plea agreement. (Govt.'s Ex.

504, at 2); *see also* 21 U.S.C. § 841(b)(1)(A). It is the term mentioned by Judge Nevas, without

---

[22] Although I review this omission not under the plain error standard but under the more stringent habeas standard, *see Napoli*, 32 F.3d at 36 ("[T]he plain error standard, under which we will correct an error that is 'plain,' 'affect[s] substantial rights' and 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings,' is less stringent than the section 2255 standard") (internal citing references omitted), I nonetheless find that Mr. Morales has satisfied the test for § 2255 relief. The imposition of a sentence based on a fundamental error in the determination of the applicable statutory minimum—at least where the record does not suggest the error was harmless—strongly suggests that the defendant received greater punishment than he would have had the law been correctly determined. Although the law authorized the term of supervised release here, all indications are that Judge Nevas would not have imposed it—and the record reveals no reason he should have imposed it—absent the legal error in determining the statutory minimum. That is enough to qualify this error as "a fundamental defect which inherently results in a complete miscarriage of justice." *Napoli*, 32 F.3d at 36.

comment, at Mr. Morales's change of plea hearing.  (COP Tr., Govt.'s Ex. 507, 13:5-8) ("In addition, any sentence of incarceration under this provision will necessarily include a term of supervised release of at least ten years, and as much to [sic] life.").  Judge Nevas made no findings as to the supervised release term at the first sentencing hearing, and at the second sentencing hearing, his only mention of the supervised release term was in imposing Mr. Morales's sentence—at which point he simply stated that "the standard conditions of supervised release" would apply and that that term would be 10 years, without further explanation.  (Jan. 14, 2009 Tr., Govt.'s Ex. 522, 75:18-19.)  The Judgment also specified a 10-year term of supervised release, without further comment.  (Govt.'s Ex. 524 ("Upon release from imprisonment, the defendant shall be on supervised release for a total term of 10 years.").)  Of course, while 21 U.S.C. § 841(b)(1)(A)—even in the absence of a second offender enhancement—authorizes a 10-year term of supervised release, it does not require one, and the minimum applicable term without the second offender enhancement is five years.  21 U.S.C. § 841(b)(1)(A).  Especially because Judge Nevas only briefly mentioned supervised release and did not explain why he was imposing a 10-year term, and because the 10-year term is "the exact mandatory minimum," *Sanchez, supra*, for a properly enhanced offense under 21 U.S.C. § 841(b)(1)(A), there is compelling evidence in the record that Mr. Morales's supervised release term of 10 years was based solely on Judge Nevas's incorrect view that it was the minimum term and not on the same "informed and individualized judgment" Judge Nevas demonstrated in determining Mr. Morales's term of imprisonment.  As discussed above, however, Mr. Morales's trial/appellate counsel failed to pursue this issue on appeal.[23]

        This is a difficult case, in which an otherwise diligent and committed attorney did not appeal a significant and obvious issue, albeit one that was understandably overshadowed by the

---

[23] The record is unclear as to whether counsel sought to raise the supervised release issue in the district court.

lengthy term of imprisonment at issue.  Further, there is no doubt that Mr. Morales's counsel fought hard for his client. He successfully negotiated a plea offer that reduced Mr. Morales's mandatory minimum from life imprisonment.  Before sentencing, he arranged for a psychiatric evaluation of Mr. Morales and introduced the resulting report as mitigating evidence of Mr. Morales's difficult childhood.  He elicited testimony from Mr. Morales's family members in support of Mr. Morales, and Judge Nevas ultimately relied on such testimony in imposing a non-Guidelines sentence.  Yet none of this diligence explains why counsel did not challenge Mr. Morales's supervised release term on appeal—a legal error the Second Circuit found in a companion case to be "clear and obvious" and to "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings." *Sanchez*, 2014 WL 6805197, at *1.  While the plain error standard is not equivalent to the "objectively reasonable" test that comprises the first prong of the *Strickland* standard, the obviousness of the error informs the assessment of counsel's performance.  Further, I see nothing in the record suggesting a reasonable basis or strategic consideration that would justify not raising this issue.  I therefore find that counsel's failure to challenge the supervised release term fell below the standard of reasonably effective counsel.

I also find that Mr. Morales has satisfied the second prong of *Strickland*.  Given Mr. Sanchez's success on his nearly identical supervised release claim, there is a reasonable probability that had Mr. Morales's counsel raised this issue on appeal, it would have been successful.  *See Mayo*, 13 F.3d at 536 (finding prejudice under *Strickland* where defendant's counsel failed to appeal a significant and obvious issue that a co-defendant had appealed successfully).  In addition, the compelling evidence in the record that the 10-year term was treated as a mandatory minimum and imposed based solely on the improper enhancement shows that it would have made a difference, i.e., that there is a reasonable probability that but for

counsel's omitting this argument on appeal, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. In other words, there is a reasonable probability that but for counsel's error, Mr. Morales would have received a five year term of supervised release. And while an increase of five years' supervised release may not seem significant, even relatively short increases in the ultimate sentence received will suffice to show prejudice for purposes of an ineffective assistance claim. *See Brewer v. United States*, 551 Fed. Appx. 560 (11th Cir. 2014) (finding ineffective assistance when counsel failed to object to improperly enhanced supervised release term). Based on the record before me, I can see no reasonable basis or strategic reason for counsel to have failed to raise this significant and obvious issue on appeal, and his failure to do so has prejudiced Mr. Morales. I therefore grant Mr. Morales's petition as to this claim.[24]

## VII. Conclusion

For the reasons set forth above, the Judgment is vacated as to the term of supervised release only, and Mr. Morales's request to vacate, set aside, or correct his conviction under § 2255 is otherwise denied. A question remains as to the proper remedy. This Court did not originally sentence Mr. Morales. It appears from the record that Judge Nevas would have imposed a five-year term of supervised release but for the legal error in determining the mandatory minimum term. Further, having reviewed the entire record in this case, including the original PSR, this Court is unaware of any reason that it would not have imposed a supervised release term of five years had it been responsible for sentencing Mr. Morales. Nonetheless, it is unclear whether this Court may properly resentence Mr. Morales to a five year term of supervised release on the existing record and without holding a resentencing hearing. Therefore, the parties shall submit briefs, not to exceed eight pages, on the question of whether this Court

---

[24] Because I grant Mr. Morales's petition as to this claim and find his other arguments meritless, I need not address his argument that his counsel's "cumulative errors" deprived him of ineffective assistance.

may and should simply adjust Mr. Morales's sentence to reflect a five year term of supervised release without holding further proceedings, or whether this Court should conduct a full resentencing hearing as to the term of supervised release.  The briefs shall be submitted within 30 days of this ruling.

Finally, because Mr. Morales has not "made a substantial showing of the denial of a constitutional right" as to the claims I have denied, no certificate of appealability shall issue.[25] Mr. Morales has not demonstrated that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Rhagi v. Artuz*, 309 F.3d 103, 106 (2d Cir. 2002) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation omitted)).


                              IT IS SO ORDERED.



                              ____/s/_____
                              Michael P. Shea, U.S.D.J.


Dated:          Hartford, Connecticut
                December 29, 2014


---

[25] The statute provides in relevant part:  "Unless a circuit judge or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255."  28 U.S.C. § 2253(c)(1).